UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Westley Oneill Rice,  )<br>  )<br>            Plaintiff,  )<br>  )<br>       -vs-  )<br>  )<br>Kilolo Kijakazi,  )<br>Acting Commissioner of Social Security,  )<br>  )<br>            Defendant.  )<br>_____ ) | Civil Action No.: 4:22-cv-0623-TER<br><br>ORDER |

  This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A. Procedural History

  Plaintiff filed an application for DIB on May 6, 2019, with an amended alleged onset date of May 8, 2018, the day after a prior unappealed final ALJ decision. (Tr. 16, 108). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in May 2021 at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 7, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 16-32). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on January 12, 2022, making the

ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court in March 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on February 8, 1987 and was thirty-three years old on the date last insured. (Tr. 30). Plaintiff had at least a high school education and past relevant work experience as a quality assurance monitor, truck loader, metal technician, team leader, machine operator, and press operator. (Tr. 30). Plaintiff alleges disability originally due to complex regional pain syndrome(CRPS) of right arm/neck, diabetes, brachial plexopathy, cervical radiculopathy, and depression. (Tr. 151). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of June 7, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 16-32):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020 (B10D).

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of May 8, 2018 through his date last insured of December 31, 2020 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: obesity, shoulder impingement syndrome, cervical radiculopathy, small fiber neuropathy, and major depressive disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity

        to perform light work as defined in 20 CFR 404.1567(b) except: Never climb ladders, ropes, and scaffolds. Occasionally crawl. Frequent handling. Avoid concentrated exposure to hazards. Occasional bilateral reach overhead. Frequent interaction with the public, coworkers, and supervisors.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 8, 1987 and was 33 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 8, 2018, the amended alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to properly evaluated CRPS(complex regional pain syndrome) in accordance with SSR 03-2p. Plaintiff argues the ALJ erred in evaluating Dr. Moss's opinions. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A. LEGAL FRAMEWORK

#### 1. The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**CRPS/SSR 03-2p**

Plaintiff argues[3] the ALJ failed to properly evaluated CRPS(complex regional pain syndrome) in accordance with SSR 03-2p.

CRPS is "a chronic pain syndrome most often resulting from trauma to a single extremity."

---

[3] Plaintiff's argument is overarching and not directed at a specific individual finding by the ALJ. *See Stephanie N. v. Saul*, No. 1:20-cv-2027-SVH, 2021 WL 777560, at *20 (D.S.C. Mar. 1, 2021)(directing SSR 03-2p issues at the subjective symptom evaluation); *Tyheim H., v. Kijakazi*, No. CV ADC-21-223, 2022 WL 195606, at *3 (D. Md. Jan. 21, 2022)(directing SSR 03-2p issues at the RFC determination).

6

SSR 03-2p. Plaintiff alleges his CRPS is related to his right arm/neck. (Tr. 151). It can be from surgery affecting other body parts or even a minor injury can act as a trigger. SSR 03-2p, *1. Plaintiff had two failed prior surgeries. (Tr. 478-479, 530, 675)(in 2015, years before the relevant period, it was noted: "Because of the multiple surgeries he has had, and the inherent trauma introduced from that surgery, we will also have to be concerned with complex regional pain syndrome."). "It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." SSR 03-2p, *1.

The diagnostic criteria are: "the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region.[4] The complaints of pain are associated with: swelling,[5] autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature[6] changes, or abnormal pilomotor erection (gooseflesh); abnormal hair or nail growth (growth can be either too slow or too fast); osteoporosis; or involuntary movements of the affected region of the initial injury." SSR 03-2p, *2. In order to be considered an MDI(medically determinable impairment) under the SSA regulations, one or more of the above "clinically documented signs in the affected region at any time" is required. SSR 03-2p, *4.[7] There is no requirement that the signs be present continuously and it is acceptable—even characteristic of

---

[4] There are a plethora of records of Plaintiff's impaired mobility of upper extremity, i.e., decreased range of motion. (Tr. 373, 378, 383, 386, 391, 394, 682, 685, 690, 692, 696, 718, 723, 734, 745, 748, 752, 757, 767, 782, 785, 788).

[5] In June 2019, under history, it states: "notes swelling, numbness, and tingling in his hands." (Tr. 410). In January 2020, it is noted Plaintiff's left shoulder had swelling. (Tr. 676).

[6] In July 2018, pain was described as cold and burning. (Tr. 393).

[7] Defendant does not present any argument against Plaintiff's assumption that CRPS meets the MDI requirements of SSR 03-2p. The ALJ made no express findings either way. There are some records cited in the footnotes above that may support Plaintiff's assumption.

7

CRPS—that signs are transient, appearing at one exam and not the next. SSR 03-2p, *4. "It should be noted that conflicting evidence in the medical record is not unusual ... due to the transitory nature of its objective findings and the complicated diagnostic process involved. Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources." SSR 03-2p, *5. CRPS individuals may be typically younger in age. SSR 03-2p, *8. Just like all other impairments, CRPS claims are adjudicated following the sequential evaluation process where the ALJ is to evaluate the extent of symptoms and how they limit ability to do work activities.

The ALJ did not find CRPS severe per se. (Tr. 19). The ALJ expressly found severe impairments of obesity, shoulder impingement syndrome, cervical radiculopathy, small fiber neuropathy, and major depressive disorder. (Tr. 19). In the discussion of impairments, the ALJ noted: "these impairments have been classified differently by different providers (e.g., complex regional pain syndrome and brachial plexopathy) but, regardless, the undersigned has considered all impairments and symptoms fully." (Tr. 19).[8] Shoulder impingement, radiculopathy, and neuropathy simply do not have a SSR dedicated to problems in evaluating these impairments like CRPS has. It is unclear whether the ALJ recognized SSR 03-2p's cautions as to CRPS.

The ALJ discussed Plaintiff's allegations of neck pain and shoulder pain and limits in using arms. (Tr. 23). Plaintiff had two failed surgeries on his right shoulder. (Tr. 23). Plaintiff reported using a brace, medication side effects of drowsiness, and spending most of his day sleeping. (Tr. 24).

---

[8] There are records of diagnosis and treatment of CRPS by name prior to the relevant period (Tr. 483, 485, 494, 524, 575). There are notes in 2021 after the DLI of an assessment of CRPS of right upper limb with Percocet prescribed with exams of decreased range of motion and pain level of 3 with medication and 7 without medication. (Tr. 767-771). Otherwise, it is listed under history of notes during the period before the ALJ. (Tr. 658, 409, 690).

The ALJ found that Plaintiff's statements were not entirely consistent with the evidence. (Tr. 24). The ALJ acknowledged that some "objective measures confirmed the presence of some abnormalities," referencing imaging and vascular function assessment. (Tr. 24). The ALJ noted abnormal exams showing decreased range of motion, decreased sensation, decreased strength, and several positives. (Tr. 24). "This evidence provides some support for the claimant's allegations regarding his impairments." (Tr. 25).

After citing a plethora of objective abnormal findings, the ALJ noted:

Other evidence, however, suggests that the claimant's physical functioning was not as limited as alleged. Although the claimant reported being able to perform limited exertional and manipulative activities secondary to pain, medical providers throughout the period at issue generally found him to be in no acute distress during appointments (B2F/6, 11, 16, 19; B11F/12; B12F/4; B15F/1; B16F/1). During such examinations, providers typically documented intact muscle tone and mostly full strength in all extremities—including the bilateral shoulders—with only occasional instances of reduced strength as indicated in the preceding paragraph (B3F/10- 11; B8F/3; B10F/7). For example, at a July 2019 physical therapy initial assessment, the claimant had bilateral shoulder strength of 4 out of 5, and grip strength of 26.2 pounds bilaterally (B10F/7).

More recently, at a February 2021 orthopedic appointment conducted only about one month after the close of the period at issue, the claimant had full strength of 5 out of 5 of the right shoulder (B16F/1). Medical providers did not often—if ever—observe, or more precisely, chart, the claimant wearing a shoulder brace on either shoulder or wearing a sling on his right arm during appointments, despite the claimant's allegations to the contrary, which suggests that the claimant's shoulder impairments were not as debilitating as alleged (B1F-B17F). This evidence suggests that the claimant was able to perform light work with reduced postural and manipulative duties and reduced exposure to hazards to accommodate his physical impairments.

The record also suggests that the above residual functional capacity fully accommodates the claimant's cervical radiculopathy and small fiber neuropathy. Although the claimant reported occasional symptoms of numbness and tingling in his hands, medical providers noted only occasional signs of diminished grip strength or decreased sensation in the claimant's hands, as discussed above. They did not note ongoing issues with the claimant's ability to perform both fine and gross movements effectively (B1F-B17F).

(Tr. 25). The ALJ then focuses on a lack of numbness in feet despite a diagnosis of small fiber neuropathy and a normal gait. (Tr. 25). The ALJ noted the prior ALJ's findings in a prior final unappealed decision; the prior ALJ had expressly found CRPS of the right upper extremity as a severe impairment with a RFC limitation of no overhead reaching with the right and frequent reaching in other directions with right. (Tr. 29). The ALJ found the current evidence did not establish the same impairments and limitations and thus the prior ALJ's findings were not adopted and given only some weight. (Tr. 29).

From the ALJ's explanations and reasons given for findings, it does not appear there was consideration of SSR 03-2p's cautions as to the lack of continuous abnormal objectives and that it was quite typical of CRPS that an abnormal objective sign would appear at one exam and not the next. SSR 03-2p, *4.[9] The ALJ may have undervalued some evidence based on the expected transient nature of CRPS findings. SSR 03-2p, *4. "It should be noted that conflicting evidence in the medical record is not unusual ... due to the transitory nature of its objective findings and the complicated diagnostic process involved." SSR 03-2p, *5. It does not appear that the ALJ recognized that SSR 03-2p directs that clarification of conflicting evidence "should be sought first

---

[9] *See also Stephanie N. v. Saul*, No. 1:20-cv-2027-SVH, 2021 WL 777560, at *22 (D.S.C. Mar. 1, 2021)(remanding because analysis did not show considerations required by SSR 03-2p where the record reflected pain complaints following surgery to RUE and the ALJ focused on clinical signs irrelevant to CRPS); *Paul P. v. Saul*, No. CV GLS 19-2793, 2021 WL 1134751, at *4 (D. Md. Mar. 24, 2021)(remanding in part due to a lack of discussion/clarification of conflicting evidence in line with SSR 03-2p considerations); *Berry v. Saul*, No. 5:20-CV-00002-FDW, 2020 WL 6365464, at *4 (W.D.N.C. Oct. 29, 2020)(remanding because the ALJ's findings ignored the transitory nature as highlighted in SSR 03-2p and no treating provider clarification sought regarding conflicting evidence); *Stubbs v. Kijakazi*, No. 6:20-CV-3606-MGL-KFM, 2021 WL 7286831, at *5-6 (D.S.C. Sept. 2, 2021), *report and recommendation adopted*, 2022 WL 557479 (D.S.C. Feb. 24, 2022)(affirming because the ALJ did meaningfully discuss record evidence and followed SSR 03-2p and had specifically noted consideration of the complexity of CRPS in determining the RFC).

from the individual's treating or other medical sources." SSR 03-2p, *5. It also does not appear in evaluating RFC mental limitations that SSR 03-2p's guidance was considered: "Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times. These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered." SSR 03-2p, *5. "Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 03-2p, *7.

It is not clear that the ALJ followed the SSR 03-2p considerations, especially as to the transitory nature of clinical findings and the direction to seek clarification of conflicting evidence from the individual's treating providers. Pursuant to 20 C.F.R. § 402.35(b)(1), upon publication, Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the SSA. Although there is no requirement that an ALJ cite to Social Security Rulings, the ALJ's decision must be based upon application of the correct legal standard and supported by substantial evidence in the record. *Arakas v. Comm'r,* 983 F.3d 83, 94 (4th Cir. 2020). The ALJ's decision here does not show application of the considerations of SSR 03-2p and the record displays a possibility of outcome determinative error, thus, the ALJ's decision is subject to remand.

Proper explanation of this issue may have a significant impact on the Commissioner's determination at other Steps. Therefore, this court will not address Plaintiff's remaining issues.

Upon remand, the ALJ should take into consideration Plaintiff's allegations of error, including but not limited to Plaintiff's arguments regarding opinions, and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

October 31, 2022  
Florence, South Carolina

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge